Herbert A. Kaufman and Betty Mae Kaufman, Plaintiffs-Appellants, v. The City of Highwood, a Municipal Corporation, Defendant-Appellee.

Gen. No. 67–18.

Second District.

January 15, 1968.

Runyard, Behanna, Conzelman, Schultz & O'Meara, and Frank M. Daly, of Waukegan, for appellants.

Shulman and Baum, and Paul P. Black, of Chicago, for appellee.

JUSTICE BAUER delivered the opinion of the court. This is an appeal from a decree of the Circuit Court of Lake County which upheld the validity of the zoning ordinance of the City of Highwood as such ordinance related to the plaintiff's property.

The property in question is part of the abandoned right-of-way of the Chicago, North Shore & Milwaukee Railway in the City of Highwood in Lake County. It is approximately one-half mile in length from North to South and an average of 115 feet in width. The railroad tracks have been removed and the property is vacant at present. The property is bounded on the North by Old Elm Road which is the border between the City of Lake Forest and the City of Highwood, on the West by the railroad right-of-way and tracks of the Chicago, Northwestern Railroad, on the South by the abandoned car barns of the North Shore Railroad, and on the East by Sheridan Road, a state highway.

The Fort Sheridan military reservation is located across from the subject property on the East side of Sheridan Road. The Northwestern Railroad has a train station just West of the North end of the subject property and West of the train station is a small business area with nine stores and apartments in the City of Highland Park. West of the business area and beyond the Northwestern

197

tracks is a single-family subdivision, also in the City of Highland Park.

The Commonwealth Edison Company has a small substation on the West side of the subject property and electric transmission lines run the entire length of the property at its Westerly side.

The subject property was annexed to the City of Highwood in 1963. The zoning ordinance of the city has no provision for automatic classification of annexed property and the property was not zoned until the instant case was in progress. In April, 1965, the plaintiffs purchased the property and on May 25, 1965, requested the City to zone the property for business and apartments. (As an item of interest, both the plaintiffs and the defendant-city treated the property as though it were zoned for duplex apartments.) The city denied the petition for business and apartment use on August 20, 1965, and on September 24, 1965, plaintiff filed this suit, asking that the court declare the zoning ordinances of Highwood void as they pertained to the subject property and to enjoin the city from refusing to issue building permits to the plaintiffs for construction of business buildings. The city filed its answer—and, again, both parties treated the property as though zoned for duplex residences.

After the trial had commenced the city undertook to zone the property and did so. The zoning classification ultimately applied was, not unexpectedly, for duplex use. The court found this classification to be reasonable and denied the relief prayed for by the plaintiffs. This appeal followed.

■ The plaintiffs first contend that the city had no right to zone the property during the course of the trial. In essence, they rely upon the rules set forth in Sgro v. Howarth, 54 Ill App2d 1, 203 NE2d 173 (1964) where the court held that a municipality could not change a long-standing zoning classification when such a change

198

was "triggered" by an application, proper under the zoning classification at the time of the application, when the city did not approve the use. In the Sgro case, the property had been zoned for commercial use for forty years. When the plaintiff filed an application for a building permit for a gasoline station, the city, instead of granting or denying the application, started the motions necessary to rezone the property to residential use.

In the instant case it is to be noted that the application of the plaintiffs was for a "change in zoning" and the complaint sets forth that the property was zoned for "Duplex Family Residences." The zoning ordinance as ultimately passed was "triggered" by the fact that the city became aware that what everyone had assumed to be fact was not a fact: i. e., that no formal ordinance establishing a zoning classification for the property had been passed. Such action is not precluded under the language of the Sgro case. More correctly, the right of a municipality to pass ordinances relating to zoning classifications, as was done in the instant case, follows the rule as set forth in the case of Bohan v. Village of Riverside, 9 Ill2d 561, 138 NE2d 487 (1956) where the court said, at page 566:

> The mere pendency of a suit by plaintiffs does not affect the power of a municipality to pass an ordinance or the manner of exercise of such power as prescribed by statute.

Moreover, it certainly does not appear that the plaintiffs in the instant case acquired the property in question in reliance on any existing ordinance or zoning classification different from the ordinance ultimately adopted by the municipality.

Having disposed of the problem of whether the municipality had a right to adopt the ordinance in question, it

199

now becomes necessary to ascertain the validity of that ordinance as it related to the plaintiff's property.

As is usual in cases involving proposed land use, the evidence was in conflict as to the highest and best use of the property. Plaintiff introduced a proposed use as follows (to quote the Memorandum opinion of the trial court):

> A gasoline station is proposed on the northerly 200 feet; that is to be followed, proceeding southerly, first by a restaurant, a motel, some commercial offices, and the balance is to be residential. The entire strip to be occupied by these business uses is approximately 1600 feet, and the balance is to be used for residences. The type of multiple family structures involved are five structures in number, being four floor apartment buildings, containing 16 units per structure, each unit with two-bedrooms, livingroom and kitchen, to rent for approximately $150.00 per month. According to the evidence, five entrances onto Sheridan-Road would be required, and parking space would be provided to the rear. The present main entrance to Fort Sheridan would be directly across from the intended northerly business use.

Experts called on behalf of the plaintiffs testified that, in their opinion the plaintiffs proposed land use was the "highest and best use" of the property in question, and, moreover, that in their opinion the property was wholly unsuited for duplex-residential use.

The defendant city, on its part, called expert witnesses who testified that, in their opinion, the proposed use as described by the plaintiffs, was bad from any point of view, and that the highest and best use of the property was for duplex residential.

The trial judge found, in his memorandum opinion, that "the most that can be said for the evidence in this case is

that the wisdom and intelligence of the zoning in question is no more that debatable." A careful reading of the record clearly shows that this statement of the trial court was well founded.

 The rule that a zoning ordinance is presumed valid, and the burden is on a plaintiff seeking to attack an ordinance, to prove by clear and convincing evidence that the ordinance is unreasonable and unrelated to public health, safety, or welfare is well established. (Hoffman v. City of Waukegan, 51 Ill App2d 241, 244, 201 NE2d 177 (1964).) It is also clear that where room for a reasonable difference of opinion exists regarding the validity of the ordinance, the courts will uphold the ordinance. Wehrmeister v. County of Du Page, 10 Ill2d 604, 609, 141 NE2d 26 (1957).

 The plaintiffs have failed to meet the necessary burden of proof to overcome the presumption of the validity of the ordinance. The trial court so found and we find no reason to differ with that decision.

The judgment of the trial court is therefore affirmed.

Judgment affirmed.

DAVIS, P. J. and ABRAHAMSON J., concur.